IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ACM PENFIELD CFL, LLC,

   Plaintiff,

              v.                     Civil No. 13-1729 (SEC)

CHARLES ANDREW JOLLEY-TALLEY,
ET AL.,

   Defendants.

**OPINION AND ORDER**

Before the Court is the plaintiff's unopposed motion for summary judgment. Docket # 26. After reviewing the filings and the applicable law, this motion is **GRANTED**.

**Factual and Procedural Background**

ACM Penfield CFL, LLC brings this diversity action against Charles Andrew Jolley-Talley (Jolley) to collect on a mortgage note and foreclose on the mortgaged property.[1] Where, as here, a properly configured motion for summary judgment stands unopposed, the factual summary is guided by the movant's unopposed Local Rule 56 statement of uncontested facts, Docket # 25-1 (SUF) – assuming, of course, that it is "adequately supported by the record." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 116 (1st Cir. 2004).[2] The material, uncontested facts thus follow.

---

[1] The plaintiff also sued Vanessa María Ramos-Gutiérrez, Jolley's "ex-wife," Docket # 9, p. 1, and the Conjugal Partnership Jolley-Ramos, but on August 19, 2014, a partial default judgment was entered against them for their failure to plead or otherwise appear. Docket # 20.

[2] Local Rule 56 operates at the summary-judgment stage and mandates that the parties furnish brief, numbered statements of facts, supported by record citations to competent evidence. The rule "permits the district court to treat the moving party's statement of facts as uncontested," where, as here, it stands unopposed; and litigants ignore this rule "at their peril." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). Because Jolley never filed an opposing statement of material facts, the plaintiff's properly supported SUF "shall be deemed admitted . . . ." D.P.R. Civ. R. 56(e); see Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005).

**Civil No. 13-1729 (SEC)**                                                                                                           **Page 2**

The plaintiff is a corporation with its principal place of business in New York; and Jolley is a Massachusetts resident. Docket # 25-6, ¶ 2; Docket # 9, p. 1; SUF ¶¶ 1-4. On March 13, 2004, Jolley signed a mortgage note payable to Santander Mortgage Corporation for $575,000 with interest at 5.375% per year, due on April 1, 2034. Docket # 25-3. The note was secured by a property located in Humacao, Puerto Rico and is described (partially in the Spanish language) as follows:

> ---URBANA: HORIZONTAL PROPERTY: Apartment number four hundred and ten (#410) of the Alameda building, which forms part of The Marbella Club II Condominium Regime, located in The Marbella Club at Palmas del Mar, Candelero Abajo Ward, Humacao, Puerto Rico. Irregular shaped one story, two (2) bedroom unit, with a total construction area of one thousand seven hundred seventy five (1,775) square feet, equivalent to one hundred sixty-four point ninety-six (164.96) square meters. The main entrance is located on the side of the apartment leading to common area of the Condominium surrounding the interior open courtyard of the Alameda Building. This apartment occupies part of the first floor of the Alameda Building. Its boundaries area: by the SOUTHEAST, with the common wall that separates it from Apartment four hundred and eleven (411) and interior common areas of the Condominium; by the NORTHWEST, with exterior common areas of the Condominium; by the SOUTHWEST, with interior and exterior common area of the Condominium and by the NORTHEAST, with exterior common areas of the Condominium. This unit contains a vestibule with closet and laundry closet, a living dining room (great room) with balcony, a kitchen, a bathroom, a hall, a master bedroom with bathroom and walk-in- closet, a bedroom with hall, kitchenette area, bathroom, 3 closets and two balconies, and a covered terrace. This unit has the exclusive use and enjoyment of the following limited common elements of the Marbella Club II Condominium; storage cage and parking space identified both with number four hundred and ten (#410) located in the basement floor of the Alameda Building, with a total area of twelve (12) square feet, equivalent to one point twelve (1.12) square meters and one hundred thirty-nine point zero four (139.04) square feet, equivalent to twelve point ninety two (12.92) square feet, respectively; hallway area located in front of the entrance of the unit, with a total area of sixty point twenty (60.20) square feet, equivalent to five point sixty (5.60) square meters; and a terrace located to the unit, with a total area of five hundred twenty point thirty-four (520.34) square feet, equivalent to forty eight point thirty-six (48.36) square meters. The residential Unit has one point six five four percent (1.654%) General Common Elements of the Marbella Club II Condominium and three point seven seven five percent (3.775%) share on the limited common elements of the Marbella II Condominium.-----------------------------------------
>
> > ---Consta pendiente de inscripción en los Libros del Registro de la Propiedad de Puerto Rico, Sección de Humacao, al Asiento ochocientos cuarenta (840) del Diario ochocientos sesenta y dos (862) de Humacao. Se separa de la finca número trece mil

**Civil No. 13-1729 (SEC)**                                                                                           Page 3

        setecientos cincuenta, inscrita al folio veintinueve (29) del tomo
        trescientos veintinueve (329) de Humacao.------

Docket # 25-4, pp. 20-21; Docket # 1, ¶ 8; SUF ¶ 7

According to the summary-judgment record, Jolley owns in fee simple the real property described above. See Docket # 25-6, ¶ 4 (sworn statement of Marian Hernández, ACM Penfield CFL, LLC officer). The record also makes manifest that Jolley defaulted on his obligations under the note. Id. ¶ 5. And as of May 29, 2014, he owed $491,890.01 in principal; interest in the amount $50,821.80, which continue to accrue at the rate of 5.375% per annum until full payment of the debt; $3,863.76 in accrued late charges; escrow deficiency of $2,406.53l; property preservation in the amount of $13,824.92; and $57,500 in attorney's fees. Id. ¶ 5; Docket # 25-3.

The plaintiff, the current holder and owner of the note, id. ¶ 4; Docket # 25-3, p. 3, filed this action on September 27, 2013. Docket # 1. Through a letter, Jolley "answered" the complaint, see Docket # 9, but has since neglected to comply with any court orders. See Dockets # 18, 22. In due course, the plaintiff moved for summary judgment.

**Standard of Review**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the moving-party properly constitutes a summary-judgment motion, the burden shifts onto the nonmovant — or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014) — to "point to competent evidence and specific

**Civil No. 13-1729 (SEC)**                                                                                              **Page 4**

facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). "If the evidence is merely colorable, or is not significantly probative," the Supreme Court has instructed, "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (internal citations omitted). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffices to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996) .

**Applicable Law and Analysis**

As detailed above, the plaintiff says that it is entitled to summary judgment against Jolly for the forced sale of the mortgaged property. Docket # 25. And although Jolly never opposed this request, "an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 13 (1st Cir. 2007); see also, e.g., NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7-8 (1st Cir. 2002) ("[A] district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days."). As explained below, however, the plaintiff is nevertheless entitled to summary judgment.

In reaching this determination, the Court takes note of several bedrock principles. In this diversity case, Puerto Rico law applies. Citibank Global Markets, Inc. v. Rodríguez Santana, 573 F.3d 17, 23 (1st Cir. 2009). And under Puerto Rico law, "contracts shall be binding,

**Civil No. 13-1729 (SEC)**                                                                                             **Page 5**

regardless of the form in which they were executed, 'provided the essential conditions required for their validity exist.'" <u>Markel Am. Ins. Co. v. Diaz–Santiago</u>, 674 F.3d 21, 31 (1st Cir. 2012) (quoting P.R. Laws Ann. tit. 31, § 3451). Well-recognized Puerto Rico law also dictates that "obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." P.R. Laws Ann. tit. 31, § 2994. Pertinently, under Puerto Rico law, mortgage is "a guarantee of a debt, which in turn is secured by a particular property." <u>Chicago Title Ins. Co. v. Sotomayor</u>, 394 F. Supp. 2d 452, 460 (D.P.R. 2005) (citing <u>Torres v. Fernández</u>, 47 P.R. Dec. 845, 848 (1934)); <u>see</u> P.R. Laws Ann. tit. 30, § 2551 ("A mortgage directly and immediately binds an estate and the rights on which it is imposed, whoever its owner or titleholder may be, to the fulfillment of the obligation for the security of which it was constituted."); <u>accord</u> <u>Soto-Rios v. Banco Popular de Puerto Rico</u>, 662 F.3d 112, 118 (1st Cir. 2011). As sagaciously explained by the late Judge Pieras:

> [I]t is important to distinguish between the actual debt and the mortgage. Any given debt can give rise to a personal action for collection of monies which may eventually be executed upon personal or any other property of the debtor. These proceedings will be filed against the debtor and the prayer for relief is limited to money. The mortgage, on the other hand, is the guarantee which gives rise to a mortgage foreclosure suit to collect from the very property that secured the debt.

<u>CitiMortgage, Inc. v. Rivera-Anabitate</u>, No. 10-2244, 2014 WL 794312, *2 (D.P.R. Feb. 26, 2014) (quoting <u>Chicago Title Ins.</u>, 394 F. Supp. 2d at 460). It thus follows that a "mortgage creditor may seek foreclosure if the debtor defaults on the payment of any principal or interest due." <u>Treco, Inc. v. Marina de Palmas, Inc.</u>, 626 F. Supp. 335, 342 (D.P.R. 1986) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>REO Properties Corp. v. Suarez</u>, No. 10-2283, 2012 WL 4424955, *3 (D.P.R. Sept. 24, 2012).

In this case, it is undisputed that Jolly has not fulfilled his payment obligations under the mortgage note, thus defaulting thereon. See Docket # 25-6, ¶ 5. And the note allows the lender

**Civil No. 13-1729 (SEC)** **Page 6**

(here, the plaintiff) to collect on this note upon a borrower's default. See Docket # 25-3, p. 1. There is therefore no genuine issue of material fact about liability; nor is there one about the plaintiff's entitlement to foreclose on Jolly's property and utilize the proceeds from its sale to satisfy the outstanding debt. Accord CitiMortgage, Inc., 2014 WL 794312, *2.[3]

### Conclusion

For the reasons stated, the plaintiff's motion for summary judgment is **GRANTED**. Judgment will consequently be entered against Jolly for $491,890.01 in principal; interest in the amount $50,821.80; $3,863.76 in accrued late charges; escrow deficiency of $2,406.53l; property preservation in the amount of $13,824.92; and $57,500 in attorney's fees.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of August, 2014.

                *s/ Salvador E. Casellas*
                SALVADOR E. CASELLAS
                U.S. Senior District Judge

---

[3] It is common ground that courts can order a judicial sale of a property to enforce a money judgment, Fed. R. Civ. P. 69(a)(1), and that, barring an applicable federal statute, state law controls the process. Id. As to the judicial sale of property, 28 U.S.C. § 2001 dictates the location of the sale, but state law prescribes the procedure. Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 350 (1st Cir. 1997); see also, e.g., Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384, 396 n. 16 (D.P.R. 1981); 12 Charles A. Wright et al., Federal Practice and Procedure § 3012 (2d ed. updated Apr. 2013). Puerto Rico Civil Procedure Rule 51.8 in turn governs judicial sales, P.R. Laws Ann. tit. 42, Ap. III, R. 51.8, while Puerto Rico Mortgage Law, P.R. Laws Ann. tit. 30, prescribes specific procedures for mortgage foreclosures. See generally In re Martínez Ortiz, 306 B.R. 727, 730 (Bankr. D.P.R. 2004). At this stage, to be sure, the Court expresses no opinion about the plaintiff's compliance (or not) with this procedure.